UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MAQUILACERO S.A. DE C.V. AND TECNICAS DE FLUIDOS S.A. DE C.V., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant*. | Court No. 25-00176 |

## COMPLAINT

Pursuant to Rules 3(a)(2) and 7(a)(1) of the Rules of the U.S. Court of International Trade ("USCIT Rules") and 19 U.S.C. § 1516a(a)(2)(A), Maquilacero S.A. de C.V. ("Maquilacero") and Tecnicas de Fluidos S.A. de C.V. ("TEFLU") (collectively, "Plaintiffs"), by and through their undersigned counsel, allege and states as follows:

### ADMINISTRATIVE DECISION TO BE REVIEWED

1.  Plaintiffs appeal certain aspects of the U.S. Department of Commerce's ("Commerce") final results of the administrative review of the antidumping duty order on Light-Walled Rectangular Pipe and Tube ("LWR") from Mexico, covering the period August 1, 2022, to July 31, 2023 ("POR"). *See Light-Walled Rectangular Pipe and Tube From Mexico*, 90 Fed. Reg. 25232 (Dep't Commerce June 16, 2025) (final results of antidumping duty admin. review; 2022-2023) ("*Final Results*"), and accompanying Issues and Decision Mem. (Dep't Commerce June 10, 2025) ("I&D Mem."); *see generally Light-Walled Rectangular Pipe and Tube From Mexico, the People's Republic of China, and the Republic of Korea: Antidumping Duty Orders; Light-Walled Rectangular Pipe and Tube From the Republic of Korea: Notice of Amended Final Determination of Sales at Less Than Fair Value*, 73 Fed. Reg. 45403 (Dep't Commerce Aug. 5, 2008) ("*Order*").

AFSDOCS:303121621.3

2. Plaintiffs bring this action to contest, as unsupported by substantial evidence on the record and otherwise not in accordance with law, the following determinations by Commerce:

    a. That customized products produced by TEFLU from LWR tubing are within the scope of the *Order*;

    b. To collapse Maquilacero and TEFLU;

    c. To use period-wide weight-averaged costs to determine Plaintiffs' cost during the POR;

    d. To apply a smoothing adjustment in averaging costs for Plaintiffs' products identified by control numbers or CONNUMs:

    e. To calculate Plaintiffs' margin using the average-to-transaction ("A-T") methodology based on the results of Commerce's differential pricing methodology ("DPM"), including its use of the Cohen's *d* test.

## JURISDICTION

3. Pursuant to 28 U.S.C. § 1581(c), and through 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii), this Court has exclusive jurisdiction to review the final results of administrative reviews by Commerce.

## STANDING OF PLAINTIFFS

4. Plaintiff Maquilacero is a foreign manufacturer, producer, and exporter of the subject merchandise and is therefore an interested party within the meaning of 19 U.S.C. §§ 1677(9)(A), 1516a(f)(3), and 28 U.S.C. § 2631(k)(1).

5. Plaintiff TEFLU is a foreign producer and exporter of automotive parts and other parts made from the subject merchandise. Commerce found, and Plaintiffs contest, that the

automotive parts produced and exported by TEFLU are products covered by the scope of the *Order*. However, based on Commerce's finding that TEFLU produces and exports subject merchandise, and Commerce's decision to collapse TEFLU and Maquilacero (which Plaintiffs also contest), Plaintiff TEFLU is an interested party within the meaning of 19 U.S.C. §§ 1677(9)(A), 1516a(f)(3), and 28 U.S.C. § 2631(k)(1).

6.Each of the Plaintiffs actively participated in the administrative proceeding that is the subject of this appeal through detailed submissions, including filing questionnaire responses, supplemental questionnaire responses, case and rebuttal briefs. Accordingly, Plaintiffs have standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

7.Commerce published the *Final Results* in the Federal Register on June 16, 2025. This action was commenced on August 4, 2025, with the filing of the summons. *See* Summons (Aug. 4, 2025), ECF No. 1. This action was timely commenced by the filing of a summons within the statutory time limits prescribed in 19 U.S.C. § 1516a(a)(5)(A) and 28 U.S.C. § 2636(c), because this appeal concerns merchandise from Mexico, a free-trade area country, and the 30-day period to commence an action in the U.S. Court of International Trade did not begin to run until July 17, 2025, which is "the 31st day after the date on which notice of the determination is published in the Federal Register." 19 U.S.C. § 1516a(a)(5)(A).

8.This Complaint is being filed on August 13, 2025, within 30 days of filing the summons. 19 U.S.C. § 1516a(a)(2)(A); USCIT Rule 3(a)(2). Therefore, this Complaint is timely filed.

AFSDOCS:303121621.3

**STANDARD OF REVIEW**

9. This Court must remand any administrative determination by Commerce which is "unsupported by substantial evidence on the record" as a whole or is "otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

10. When reviewing whether Commerce's findings are supported by substantial evidence, the Court assesses whether the agency action is "unreasonable" given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Substantial evidence represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (citation omitted). The substantial evidence inquiry takes into account the entire record, which includes evidence that supports and detracts from the conclusion reached. *Nippon Steel*, 458 F.3d at 1352.

11. When determining whether Commerce's determinations are lawful, the Court inquires whether Commerce "carr{ied} out its duties properly, relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusion." *Rhone-Poulenc, Inc. v. United States*, 927 F. Supp. 451, 454 (Ct. Int'l Trade 1996); *see also Asociacion Colombiana de Exportadores de Flores v. United States*, 6 F. Supp. 2d 865, 880 (Ct. Int'l Trade 1998). Commerce must "provide that A-to-Z explanation" that sets "forth the interpretations and evidence-based factual findings that establish the required connection from statute to determination." *CS Wind Viet. Co. v. United States*, 832 F.3d 1367, 1377 (Fed. Cir. 2016).

**STATEMENT OF FACTS**

12. Maquilacero manufactures and sells commercial LWR tubing produced to ASTM A-513, the Standard Specification for Electric-Resistance-Welded Carbon and Alloy Steel

Mechanical Tubing, to customers in their home market and the United States. *See* Letter from Arent Fox LLP to Hon. G. Raimondo, Re: *Light-Walled Rectangular Pipe and Tube From Mexico;* Maquilacero S.A. de C.V.'s Section A Questionnaire Response at 22, 45–46 (Dec. 22, 2023) ("Maquilacero Sec. A QR"). Maquilacero makes commercial LWR to standard specifications and sizes.

13.  On the other hand, TEFLU (Maquilacero's affiliated party) is a Mexican producer of automotive parts and other parts for original equipment manufacturers. *See* Maquilacero Sec. A QR at 14–16. TEFLU uses LWR tubing produced by Maquilacero as an input in its own production of auto parts and other products. *See id.* at 14–16, Exh. A-29. TEFLU processes the input LWR tubing and produces a new product that is customized for a single use, in a specific automotive subassembly. *See, e.g.*, *id.* at 2–3, 5. TEFLU undertakes this process in its own facilities, using production equipment and machinery distinct from the facilities and equipment used by Maquilacero. *See, e.g.*, *id.* at 2–3, 5. The parts produced by TEFLU from LWR tubing are sold as automotive parts, not as LWR tubing. In other words, TEFLU makes customized products for use by a single customer for a single end use in a specific subassembly.

14.  On October 18, 2023, Commerce initiated the antidumping administrative review at issue pursuant to 19 C.F.R. § 351.221(c)(1)(i). *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 71829 (Dep't Commerce Oct. 18, 2023). The review covers entries from August 1, 2022, through July 31, 2023.

15.  Relying on its collapsing determination in a previous segment of this proceeding, Commerce collapsed Maquilacero and TEFLU and selected "Maquilacero/TEFLU" as one of the two mandatory respondents in this administrative review. *See* Memorandum from J. Conniff to E. Begnal, re: 2022-2023 Administrative Review of Light-Walled Rectangular Pipe and Tube

from Mexico: Respondent Selection (Nov. 8, 2023) (citation omitted). Because Commerce collapsed Maquilacero and TEFLU, the two companies provided responses to Commerce's initial antidumping questionnaire, supplemental questionnaires, and submitted legal arguments throughout the proceeding.

16. Throughout the administrative review and in other segments of this proceeding, Plaintiffs have maintained that TEFLU uses LWR tubing to produce new downstream products that are distinct from LWR tubing and are outside the scope of the *Order*.

17. While Plaintiffs reported to Commerce the sales of TEFLU parts in the initial Sections B and C questionnaire responses, Plaintiffs also explained that the parts produced by TEFLU are outside the scope of the *Order* because the input LWR tubing undergoes further processing and customization that substantially transforms it into distinct products with different characteristics, uses and customers. *See, e.g.*, Maquilacero's Section B Questionnaire Response at 3, 24 (Jan. 17, 2024) ("Maquilacero Sec. B QR"); Maquilacero's Section B Questionnaire Response for TEFLU at 5–8 (Jan. 17, 2024) ("TEFLU Sec. C QR").

18. On September 13, 2024, Commerce issued their *Preliminary Results*. *Light-Walled Rectangular Pipe and Tube From Mexico*, 89 Fed. Reg. 74916 (Dep't Commerce Sept. 13, 2024) (prelim. results and intent to rescind, in part, of antidumping duty admin. review; 2022–2023) ("*Preliminary Results*"), and accompanying Preliminary Decision Memorandum ("Prelim. Dec. Mem.").

19. For the *Preliminary Results*, Commerce continued to find that TEFLU produces subject merchandise and collapsed TEFLU with Maquilacero. *See* Prelim. Dec. Mem. at 1, n.1.

20. Commerce preliminarily determined to depart from its normal practice in calculating Plaintiffs' weighted-average costs. *Id*. at 14. Typically, Commerce uses a

6

respondent's period-wide costs but will use an alternative methodology (usually quarterly-averaged costs) when the record demonstrates that: (i) the changes in the cost of manufacturing during the POR were significant; and (ii) the sales made during the shorter cost averaging periods could be reasonably linked with the cost of manufacturing during the same shorter cost-averaging period.  *See id*.  Commerce preliminarily found that Plaintiffs' data satisfied the criteria for the use of an alternative cost averaging methodology and applied its quarterly-cost averaging methodology. *See id.*

21. Commerce preliminarily calculated a dumping margin of 20.30 percent for Plaintiffs.  *See Preliminary Results*.

22. Shortly after Commerce issued the *Preliminary Results*, this Court issued its decision in *Maquilacero S.A. de C.V. v. United States*, 731 F. Supp. 3d 1346 (Ct. Int'l Trade 2024), and remanded Commerce's final results in the administrative review of the *Order* covering the period August 1, 2020, through July 31, 2021.  Specifically, this Court found that Commerce's scope interpretation and resulting conclusion that TEFLU produces subject merchandise was not supported by substantial evidence and is not in accordance with the law.  Moreover, because the Court remanded Commerce's scope determination, the Court also remanded Commerce's decision to collapse Maquilacero and TEFLU.

23. In March 2025, interested parties submitted case briefs and rebuttal briefs concerning Commerce's *Preliminary Results*.  Case Brief of Maquilacero (Mar. 5, 2025) ("Maquilacero's Case Brief"); Case Brief of Nucor Tubular Products, Inc. (Mar. 5, 2025) ("Nucor's Case Brief"); Rebuttal Brief of Maquilacero (Mar. 14, 2025) ("Maquilacero's Rebuttal Brief"); Rebuttal Brief on Behalf of Nucor Tubular Products, Inc. (Mar. 14, 2025) ("Nucor's Rebuttal Brief").

24. Based on this Court's decision in *Maquilacero*, Plaintiffs urged Commerce that downstream automotive products produced by TEFLU are not subject merchandise. *See* Maquilacero's Case Brief at 7–15. Plaintiffs explained that TEFLU's products undergo further manufacturing through several additional operations, including saw-cutting, laser cutting-to-length, drilling, perforation, and/or bending. The additional processing TEFLU performs on these products creates a new product with distinct physical characteristics compared to the subject merchandise. Plaintiffs observed that TEFLU's downstream products are substantially transformed and lose their character as LWR tubing, such that they are not covered by the scope of the *Order*.

25. Plaintiffs further relied on *Maquilacero* with respect to Commerce's collapsing determination. *See id.* at 15–21. As Plaintiffs observed, Commerce's regulation do not permit the agency to collapse affiliated parties, unless they share "production facilities for similar or identical products." *See id.* at 18; 19 C.F.R. § 351.401(f)(1). Plaintiffs do not share such production facilities for the manufacturing of subject merchandise. Further, Plaintiffs pointed out that the record lacks evidence that Maquilacero sets TEFLU's prices or is involved in the production of TEFLU's products. Thus, there was no risk of manipulation of price and production, which would justify a collapsing determination.

26. Plaintiffs contested Commerce's use of the Cohen's *d* test in the first stage of the DPM to determine Plaintiffs' margin. Maquilacero's Case Brief at 28–34. Specifically, Plaintiffs pointed out that in applying the Cohen's *d* test, Commerce had not explained whether the groups of data subject to the Cohen's *d* comparisons satisfied the assumptions of normality, equal variances, or equal size, as required by the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"). *See id.* at 29–30 (citing *Stupp Corp. v. United States*, 5 F.4th 1341, 1360

8

(Fed. Cir. 2021). Similarly, Commerce did not follow the Federal Circuit's holding in *Mid Continent Steel & Wire, Inc. v. United States*, 31 F.4th 1367 (Fed. Cir. 2022), which requires Commerce to either explain its use of simple averaging in calculating the Cohen's *d* denominator or choose another method for calculating the denominator. *See* Maquilacero's Case Brief at 30-32.

27. Petitioner, Nucor Tubular Products Inc. ("Nucor") submitted a case brief challenging Commerce's preliminary decision to use quarterly costs averages to calculate Plaintiffs' costs. *See* Nucor's Case Brief at 4–9. Nucor also argued that Plaintiffs' normal books and records do not accurately reflect cost differences among CONNUMs. *See id.* at 10–12. Nucor contended that Commerce should apply a "cost smoothing adjustment" in calculating Plaintiffs' direct material costs. *See id.* at 10–12.

28. On April 22, 2025, the Federal Circuit issued its opinion in *Marmen Inc. v. United States*, 134 F.4th 1334 (Fed. Cir. 2025), finding that Commerce cannot use the Cohen's *d* test in the DPM when the respondent's U.S. sales data do not satisfy the three essential assumptions underlying the test (i.e., test and comparison groups are normally distributed, exhibit equal variances, and are of equal size). A day later, the Federal Circuit issued its opinion in *Stupp Corp. v. United States* (Stupp II), No. 2023-1663, 2025 WL 1178392 (Fed. Cir. Apr. 23, 2025), which applied and followed its opinion in *Marmen*.

29. On April 30, 2025, Plaintiffs timely filed a notice of subsequent authority, *see* 19 C.F.R. § 351.301(c)(6), explaining that Commerce must follow *Marmen* and *Stupp II*, which are mandatory authority, and not use the Cohen's *d* test as part of the DPM for the *Final Results* because Plaintiffs' U.S. sales data do not satisfy the three essential assumptions. *See* Maquilacero's Notice of Subsequent Authorities (Apr. 30, 2025).

30. On June 10, 2025, Commerce issued its decision for the *Final Results*.

31. Notwithstanding this Court's decision in *Maquilacero*,[1] Commerce continued to find that TEFLU's downstream products were within the scope of the *Order* and continued to collapse Maquilacero and TEFLU. Based on arguments submitted by Nucor, Commerce reconsidered its use of the quarterly-cost-averaging methodology and used cost averages spanning the entire POR. Commerce agreed with Nucor's argument that Plaintiffs' CONNUM costs fluctuated substantially during the POR, which warranted a "smoothing" adjustment. Finally, Commerce shirked its obligation to apply the Federal Circuit's opinions in *Marmen* and *Stupp II* and continued to employ the Cohen's *d* test as part of the DPM.

32. In the *Final Results*, Commerce calculated a dumping margin of 13.04 percent for Plaintiffs.

33. On July 3, 2025, Plaintiffs timely filed their Notice of Intent to Commence Judicial Review with the U.S. and Mexican Secretaries to the United States-Mexico-Canada Agreement ("USMCA").

34. Plaintiffs timely filed their summons on August 4, 2025. Summons (Aug. 4, 2025), ECF No. 1.

---

[1] Commerce issued its remand redetermination pursuant to the Court's order in *Maquilacero* on January 2, 2025. *See* Final Results of Redetermination Pursuant to Court Remand, *Maquilacero S.A. de C.V. and Tecnicas de Fluidos S.A. de C.V., et al. v. Unite States*, Consol. Court No. 23-00091, Slip OP. 24-107 (Ct. Int'l Trade October 4, 2024), Light-Walled Rectangular Pipe and Tube from Mexico (Jan. 2, 2025). In its remand redetermination, Commerce continued to find that TEFLU's downstream products were in-scope and continued to collapse Maquilacero and TEFLU.

## STATEMENT OF CLAIMS

### COUNT I

35. The facts and allegations contained in paragraphs 1 through 34 are restated and incorporated herein by reference.

36. Products manufactured by TEFLU and sold in their home market and the United States are not within the scope of the *Order*. Commerce's decision to the contrary failed to address arguments raised by Plaintiffs and evidence in the record undermining Commerce's decision. Moreover, Commerce unlawfully avoided applying this Court's opinion in *Maquilacero*.

37. Therefore, Commerce's refusal to exclude TEFLU's further-processed downstream auto parts from the scope of the *Order* is not supported by substantial evidence on the record and not in accordance with the law.

### COUNT II

38. The facts and allegations contained in paragraphs 1 through 37 are restated and incorporated herein by reference.

39. In deciding to collapse Maquilacero and TEFLU, Commerce did not adequately address the evidence and argument that TEFLU's facilities are completely different than Maquilacero's and lack the equipment to produce LWR tubing. Commerce further did not address the record evidence and arguments showing that TEFLU produces parts that are out-of-scope and otherwise did not address information on the record showing that the regulatory requirements under the collapsing regulation are not met in this case. *See* 19 C.F.R. § 351.401(f). Moreover, Commerce's determination to continue collapsing Maquilacero with

TEFLU, based solely on decisions in previous segments and without addressing this Court's analysis in *Maquilacero*, is unlawful.

40. Therefore, Commerce's decision to collapse Maquilacero and TEFLU is not supported by substantial evidence on the record and is not in accordance with law.

## COUNT III

41. The facts and allegations contained in paragraphs 1 through 40 are restated and incorporated herein by reference.

42. Commerce's decision to use period-wide weighted-average costs to determine Plaintiffs cost during the POR is unlawful because Commerce abruptly changed methodology in the Final Results and abandoned its quarterly costs methodology even though the underlying cost data did not change materially after the *Preliminary Results*, thus treating similar situations differently without an adequate explanation. Maquilacero reasonably relied on Commerce's quarterly costs methodology used in the *Preliminary Results* and in numerous prior reviews. Moreover, Commerce failed to sufficiently address the record evidence and argument demonstrating that Commerce was required to apply its quarterly-cost-averaging methodology in this case or request any additional information from Plaintiffs before changing methodologies.

43. Therefore, Commerce's decision to use period-wide averaged costs, instead of quarterly-averaged costs, is not supported by substantial evidence on the record and is not in accordance with law.

## COUNT IV

44. The facts and allegations contained in paragraphs 1 through 43 are restated and incorporated herein by reference.

45. Commerce's decision to use a "smoothing" adjustment in averaging Plaintiffs' CONNUM costs is not supported by the record. Commerce cited no evidence supporting the conclusion that Plaintiffs' records did not reasonably reflect its costs. As a matter of law, Commerce's cost smoothing adjustment has no basis in the statute or in Commerce's regulations. Moreover, Commerce failed to explain its departure from past segments, in which it has not found any issues with Plaintiffs' normal books and records. Consequently, Commerce's refusal to rely on Plaintiffs' normal books and records is arbitrary and capricious and an unjustified departure from past practice.

46. Therefore, Commerce's use of a smoothing adjustment to calculate Plaintiffs' cost is not supported by substantial evidence on the record and is not in accordance with the law.

## COUNT V

47. The facts and allegations contained in paragraphs 1 through 46 are restated and incorporated herein by reference.

48. Commerce's reliance on the DPM and subsequent use of the A-T methodology to calculate Plaintiffs' margin did not satisfy Commerce's statutory obligations for the use of the A-T methodology because, among other things, Commerce's use of the DPM, including the Cohen's *d* test, does not identify "a pattern of export prices (or constructed export prices) . . . that differ significantly among purchasers, regions, or periods of time" or explain "why such differences cannot be taken into account using" the average-to-average methodology. 19 U.S.C. § 1677f-1(d)(1)(B)(i)–(ii)

49. Therefore, Commerce's use of the DPM, and its consequent use of the A-T methodology to calculate Plaintiffs' margin, is not supported by substantial evidence on the record and is not in accordance with law.

AFSDOCS:303121621.3

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request this Court to:

(a) Hold that Commerce's *Final Results* are not in accordance with law or unsupported by substantial record evidence with respect to the claims advanced by Plaintiffs in this Complaint;

(b) Remand the *Final Results* to Commerce for determination consistent with the opinion of this Court; and

(c) Grant such additional relief as the Court may deem just and proper.

/s/ Diana Dimitriuc Quaia
Diana Dimitriuc Quaia
John M. Gurley
Yun Gao
Tyler J. Kimberly
Christian L. Bush

ArentFox Schiff LLP
1717 K Street, N.W.
Washington, DC 20006
Phone: (202) 857-6291

*Counsel to Maquilacero S.A. de C.V. and Tecnicas de Fluidos S.A. de C.V.*

Dated: August 13, 2025